# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ARRAYONIA HATCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-00351 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| CBL & ASSOCIATES PROPERTIES, INC., ) | |
| D/B/A RIVERGATE MALL, ERMC II, L.P., ) | |
| SGT. GENE MARTIN, and KEITH ) | |
| McNAMARA, ) | |
| ) | |
| Defendants, ) | |

## MEMORANDUM

Pending before the court are motions to dismiss filed by several defendants in this case. Defendants CBL & Associates Properties, Inc. ("CBL") and ERMC II, LP ("ERMC") (collectively, "Rivergate Mall Defendants"), have jointly filed a Motion to Dismiss (Docket No. 10), to which the plaintiff, Arrayonia Hatcher, filed a Response in opposition (Docket No. 13). Defendant Sergeant Gene Martin has filed two motions to dismiss: (1) a Motion to Dismiss Plaintiff's § 1983 Harassment Claim (Docket No. 28), to which Hatcher filed a Response in opposition (Docket No. 33), and Sergeant Martin filed a Reply (Docket No. 34); and (2) a Motion to Dismiss all remaining claims (Docket No. 26), to which Hatcher filed a Response in opposition (Docket No. 32).[1]  For the reasons stated herein, the Rivergate Mall Defendants' Motion to

---

[1]Counsel for the Metropolitan Government of Nashville and Davidson County filed the Motion to Dismiss Plaintiff's § 1983 Harassment Claim, which, as explained herein, relates to alleged conduct by Sergeant Martin in his official capacity as an officer within the Metro Nashville Police Department ("MNPD").  Private counsel for Sergeant Martin filed the separate Motion to Dismiss the remaining claims against him, which relate to the alleged conduct by Sergeant Martin in his capacity as a private mall security guard.

1

Dismiss will be granted in part and denied in part, Sergeant Martin's Motion to Dismiss Plaintiff's § 1983 Harassment Claim will be granted, and Sergeant Martin's Motion to Dismiss will be granted in part and denied in part.

## **BACKGROUND**[2]

This case concerns a series of events that transpired during and after Ms. Hatcher visited the Rivergate Mall ("Mall") in Goodlettsville, Tennessee on April 8, 2011. According to the Amended Complaint, CBL is a Tennessee corporation that owns and operates the Mall, ERMC is a Tennessee limited partnership that contracts to provide security at the Mall, and Sergeant Martin is a Davidson County police sergeant who worked part time for ERMC as a private Mall security guard.

On April 8, 2011, as Ms. Hatcher and her husband were leaving the Victoria's Secret store in the Mall, Sergeant Martin and several unidentified ERMC mall security guards and Tennessee state troopers accosted them. At the time, Sergeant Martin was wearing a Davidson County Police t-shirt. Mr. Hatcher spoke with Sergeant Martin while Mrs. Hatcher left to continue shopping. Shortly thereafter, Mr. Hatcher reunited with Mrs. Hatcher and told her that they were being asked to leave the mall (presumably by Sergeant Martin), due to public intoxication and disorderly conduct. As Mr. and Mrs. Hatcher proceeded to exit the mall, Sergeant Martin and other ERMC security officers followed them, and Sergeant Martin made several disparaging remarks to the Hatchers.

Once outside, Sergeant Martin and the ERMC security guards refused to permit Mr. and

---

[2]Unless otherwise noted, all background facts are drawn from Mrs. Hatcher's Amended Complaint. (Docket No. 24.)

Mrs. Hatcher to return to their vehicle, for reasons not specified in the Amended Complaint. When Mrs. Hatcher attempted to call a cab to pick her up, Sergeant Martin "harassed" her, including yelling at her. Mrs. Hatcher then called her son, who picked up Mr. and Mrs. Hatcher and drove them away without incident. None of the ERMC security officers, including Sergeant Martin, filed an incident report with ERMC concerning the incident; as a consequence, the Mall did not retain its video security footage of the incident.

Shortly after the Hatchers left the Mall, Officer Keith McNamara of the MNPD (along with other unspecified officers) conducted a traffic stop of the vehicle in which the Hatchers were traveling. According to the Amended Complaint, Officer McNamara stopped the vehicle without probable cause and informed the driver (presumably Hatcher's son) that the vehicle had been stopped because "the black female need[s] to exit the car," referring to Mrs. Hatcher. After Mrs. Hatcher exited the car, Officer McNamara began to question Mrs. Hatcher about her "attitude" and stated that she had assaulted an officer and made an obscene gesture towards an officer, apparently referring to Mrs. Hatcher's conduct towards Sergeant Martin at the Mall.[3] After Mrs. Hatcher denied Officer McNamara's allegations, Officer McNamara ordered her to get into the back of his police car, where he questioned her further.

During Officer McNamara's questioning, Mrs. Hatcher stated that she felt that she was being discriminated against and that her constitutional rights had been violated by Officer

---

[3]The Amended Complaint does not explicitly state that the alleged "assault" on "an officer" referred to Mrs. Hatcher's previous conduct at the Mall. However, the gravamen of the Amended Complaint is that, after the Hatchers left the Mall, Sergeant Martin alerted Officer McNamara to stop them under false pretenses and to arrest Mrs. Hatcher on baseless criminal charges. Thus, in the context of the Amended Complaint, it is reasonable to infer that Mrs. Hatcher must have construed the "assault" referenced by Officer McNamara as relating to her previous conduct at the Mall.

McNamara's unlawful arrest. At that point, Officer McNamara exited the police vehicle and placed a call on his cell phone to an unidentified person. Mrs. Hatcher overheard Officer McNamara's end of the ensuing conversation, in which Officer McNamara relayed Mrs. Hatcher's complaints about discrimination and violations of her constitutional rights. After ending the call, Officer McNamara informed Mrs. Hatcher that she was being placed under arrest for failure to cooperate with Officer McNamara's "investigation," although Mrs. Hatcher maintains that she was not even aware that she had been "under investigation." An unidentified officer then issued traffic tickets to everyone in the Hatchers' vehicle for failing to wear a seatbelt, even though, the plaintiff asserts, all of those individuals had been wearing their seatbelts.[4]

Officer McNamara placed Mrs. Hatcher in handcuffs and transported her downtown, making disparaging remarks to her along the way. The placement of the handcuffs caused Mrs. Hatcher severe physical pain. Once "downtown" (presumably at the MNPD office), an unspecified individual informed Mrs. Hatcher that she was being charged with public intoxication, trespass, and disorderly conduct – not with assaulting an officer, which Officer McNamara had cited as the original basis for arresting her.[5]

According to the Amended Complaint, Mrs. Hatcher then appeared in Tennessee state

---

[4] The Amended Complaint does not specify whether any individuals other than Mr. Hatcher, Mrs. Hatcher, and the Hatchers' son were traveling in the car.

[5] The Amended Complaint also states that an unidentified "corrections officer" informed Mrs. Hatcher that an INS hold had been placed on her because she was a Haitian immigrant, even though Mrs. Hatcher was born in the United States and is actually a United States citizen. Although it does not impact the court's disposition of the pending motions, it is not clear to the court what relationship this incident has to Mrs. Hatcher's underlying claims.

court to face the charges against her for public intoxication, trespass, and disorderly conduct.[6] As the court construes these allegations, Mrs. Hatcher alleges that the State of Tennessee prosecuted Mrs. Hatcher for the three charged offenses based on an affidavit and live testimony from Sergeant Martin, who represented that Mrs. Hatcher had engaged in disorderly conduct that threatened to cause harm to the Mall. It also appears that Officer McNamara played some additional unspecified role in advance of or at the trial. At any rate, after a hearing before a judge, Mrs. Hatcher was found not guilty on all of the charges.[7]

Mrs. Hatcher alleges that, following the criminal hearing, Sergeant Martin continued to harass her and her family. On March 29, 2012, Sergeant Martin, within one mile of Mrs. Hatcher's residence, stopped a car in which Mrs. Hatcher's son and niece were passengers, falsely claiming that someone meeting the passengers' description was in possession of a weapon. Sergeant Martin searched Mrs. Hatcher's son, found no weapons, and determined that Mrs. Hatcher's son had no outstanding warrants. However, Sergeant Martin accused Mrs. Hatcher's son of "raising his fist in the air" (presumably in a threatening manner) and arrested him for resisting arrest.[8] Other than this one incident, the Amended Complaint does not identify any other actions taken by Sergeant Martin (harassing or otherwise) after Mrs. Hatcher's state court trial.

---

[6]Specifically, the Amended Complaint states that Mrs. Hatcher "was prosecuted by Officer McNamara" for the charged offenses, that "Rivergate Mall was listed on the warrant as a victim," that "the affidavit was based entirely on the allegations of Sgt. Martin," and that, "[a]t trial, the State of Tennessee permitted Officer McNamara to leave, while Sergeant Martin testified on its behalf." (Am. Compl. ¶¶ 32-33.)

[7]The Amended Complaint does not specify when this ruling was rendered.

[8]The Amended Complaint does not address the ultimate disposition of this charge against Mrs. Hatcher's son.

Following these incidents, Mrs. Hatcher filed this lawsuit against CBL, ERMC, Sergeant Martin, and Officer McNamara. Mrs. Hatcher alleges the following claims: (1) causes of action under § 1983 against all defendants for violating her federal constitutional rights, including a separate count alleging a § 1983 harassment claim against Sergeant Martin relating to the March 2012 arrest of her son;[9] (2) against all defendants for false imprisonment under Tennessee law; (3) against all defendants for conspiracy under Tennessee law; and (4) against all defendants for malicious prosecution under Tennessee law. CBL and ERMC have jointly moved to dismiss all of the claims against them. Sergeant Martin has filed two separate Motions to Dismiss that, collectively, request dismissal of all of the claims asserted against him.[10]

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

---

[9] More specifically, Mrs. Hatcher asserts (1) a "general" claim under § 1983 (*see* Am. Compl. ¶¶ 43-47), alleging that the defendants' actions violated her "right not to be deprived of liberty without due process of law" and her "right to be free from false arrest," (2) a separate cause of action against "the Defendants" under § 1983 for "False Arrest" (¶¶ 48-52), referencing the "illegal stop and seizure" of Mrs. Hatcher, and (3) pursuant to this court's grant of Sergeant Martin's Motion for a More Definite Statement, a cause of action setting forth a § 1983 harassment claim specific to Sergeant Martin (¶¶ 65-69). The Introduction to the Complaint states that Mrs. Hatcher's § 1983 claims arise under the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution.

[10] Officer McNamara filed an Answer to the Amended Complaint and, therefore, the claims against him are not at issue in the pending motions.

the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

### I. § 1983 Claims Against Rivergate Mall Defendants and § 1983 Harassment Claim Against Sergeant Martin

Section 1983 provides a private cause of action for deprivations of rights provided by the United States Constitution or federal law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). To show a claim under § 1983, a plaintiff must show: (1) deprivation of a right secured by the United States Constitution or federal law; and (2) that the deprivation was caused by a person acting under color of state law. *Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012).

#### A. § 1983 Claims Against Rivergate Mall

The Sixth Circuit has squarely held that "a defendant cannot be held liable under section

7

1983 on a respondeat superior or vicarious liability basis." *Savoie*, 673 F.3d at 494. Thus, the Rivergate Mall Defendants' liability must be premised "upon a demonstration that [Mrs. Hatcher's] constitutional rights were violated and that a policy or custom of [the Rivergate Mall Defendants] was the moving force behind the deprivation of [Mrs. Hatcher's] rights." *Id.* (internal quotation omitted). Here, the Amended Complaint contains no allegations concerning a policy or custom of the Rivergate Mall Defendants, let alone that any such policy or custom was the "moving force" behind the alleged deprivations of Mrs. Hatcher's constitutional rights. Instead, Mrs. Hatcher appears to argue that the Rivergate Mall Defendants should be held liable to the extent that Sergeant Martin was acting within the scope of his employment as a security officer at the Mall. That theory of liability is expressly foreclosed by *Savoie*.[11]

Furthermore, notwithstanding the conclusory allegation that the "Defendants" conspired to have Officer McNamara arrest Mrs. Hatcher, the Amended Complaint contains no allegations and permits no reasonable inference that the Rivergate Mall Defendants harbored a conspiratorial objective to deprive her of her constitutional rights and/or committed an overt act in furtherance of such an objective. Accordingly, Mrs. Hatcher has not articulated a viable claim under § 1983 against the Rivergate Mall Defendants for conspiracy to violate her constitutional rights. *See Revis v. Meldrum*, 489 F.3d 273, 290-91 (6th Cir. 2007); *see also infra,* Section II.B (further explanation of legal standard for § 1983 conspiracy claim).

For these reasons, the § 1983 claims against the Rivergate Mall Defendants will dismissed

---

[11]The Rivergate Mall Defendants have not squarely raised this defense in their briefing. Nevertheless, acting *sua sponte*, the court has determined that *Savoie* must apply here.

without prejudice for failure to state a claim.[12]

### B. § 1983 Harassment Claim Against Sergeant Martin

Sergeant Martin argues that the § 1983 harassment claim against him relating to the March 2012 traffic stop of Mrs. Hatcher's son and niece must be dismissed pursuant to (1) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Mrs. Hatcher lacks standing, and/or (2) Fed. R. Civ. P. 12(b)(6) for failure to state a claim and/or under the doctrine of qualified immunity.

Where subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). To demonstrate standing, a plaintiff must show "constitutional standing," which requires that the plaintiff allege an "injury in fact" that can be redressed by a favorable decision, *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991), as well as "prudential standing," which requires that the plaintiff be "a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Id.* at 576.

A claimant cannot assert a § 1983 claim on behalf of a relative. *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) ("In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.") (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984)). Thus, "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered

---

[12]Because the court finds that the § 1983 claims against the Rivergate Mall Defendants must fail for the reasons stated herein, the court need not address the Rivergate Mall Defendants' remaining arguments that (1) they are not "state actors" for purposes of § 1983 liability and/or (2) that Mrs. Hatcher's alleged constitutional deprivations do not apply to them.

personally by the victim's family members." *Id.*; *see also Carmichael v. City of Cleveland*, — F. Supp. 2d —, 2012 WL 1552085, at *8 (N.D. Ohio May 1, 2012) ("Only the purported victim of the constitutional tort may prosecute a § 1983 claim. No cause of action lies under § 1983 for collateral injuries allegedly suffered personally by another.") Here, the Amended Complaint paragraphs relating to the § 1983 harassment claim against Sergeant Martin (¶¶ 65-69) do not even incorporate any of the other Amended Complaint paragraphs relating to damages. Regardless, even giving the Amended Complaint an exceedingly liberal construction, Mrs. Hatcher has not alleged damages other than "collateral injuries" relating to her son's treatment – such as "mental injury" and "severe emotional distress" – which do not independently confer standing under § 1983.

Furthermore, Mrs. Hatcher has not established that Sergeant Martin's alleged conduct during the April 2012 stop, even if accepted as true, violated *her* constitutional rights. That is, Mrs. Hatcher has not cited any legal authority showing that she has a constitutional right to be free from harassment of her children – nor is the court aware of any such authority.

Accordingly, Mrs. Hatcher's § 1983 harassment claim against Sergeant Martin is subject to dismissal with prejudice under both Rule 12(b)(1) and Rule 12(b)(6).

## II. Remaining Claims Against Sergeant Martin and the Rivergate Mall Defendants

### A. State Law Claims and Remaining § 1983 Claims Against Sergeant Martin

Mrs. Hatcher alleges that Sergeant Martin violated her rights in essentially two respects: (1) by conspiring with Officer McNamara – who was on duty on the day of the incident – to arrest Mrs. Hatcher on a pretext and to charge her with a crime without probable cause; and (2) by initiating criminal proceedings against Mrs. Hatcher (including her arrest) and actively

participating in her criminal prosecution in Tennessee state court through written and live testimony, even though he knew the charges were baseless. With respect to these incidents, Mrs. Hatcher asserts claims under § 1983 and under Tennessee law for false imprisonment, conspiracy, and malicious prosecution.

Under Tennessee law, "[f]alse imprisonment is the intentional restraint or detention of another without just cause." *Brown v. SCOA Indus, Inc.*, 741 S.W.2d 916, 919 (Tenn. Ct. App. 1997). In order to establish a claim for false imprisonment, a plaintiff must prove (1) the detention or restraint of one against her will and (2) the unlawfulness of such detention or restraint. *See Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). Here, Mrs. Hatcher concedes that she does not allege any claim of false imprisonment with respect to Sergeant Martin's conduct at the Mall. Instead, she alleges that Sergeant Martin alerted Officer McNamara to arrest her under false pretenses some distance away from the Mall, without Sergeant Martin present. Because Sergeant Martin did not actually detain or restrain Mrs. Hatcher, the court finds no basis to hold him directly liable for false imprisonment under state law. Therefore, that claim will be dismissed with prejudice.

The tort of malicious prosecution is based upon a person's procurement or initiation of civil or criminal proceedings against an innocent person with malice and without probable cause. *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977). Here, Mrs. Hatcher alleges that Sergeant Martin procured Mrs. Hatcher's arrest on false charges through Officer McNamara, then assisted the state in prosecuting her for those charges, despite knowing that they were baseless. Accepting these allegations as true, the court finds that Mrs. Hatcher has articulated a claim against Sergeant Martin for malicious prosecution.

As to the claims sounding in conspiracy, under Tennessee law, "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). A claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Similarly, under § 1983, if a private party conspires with state officials to violate a plaintiff's constitutional rights, that private party may be liable for conspiracy to deprive that plaintiff of her constitutional rights. *See Revis*, 489 F.3d at 290-91; *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000). This requires a showing that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Wellman v. PNC Bank*, No. 12-3335, 2012 WL 6177120, at *2 (6th Cir. Dec. 11, 2012) (quoting *Revis v. Meldrum*, 489 F.3d at 290) (not selected for publication); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011); *Pritchard v. Hamilton Tp. Bd. of Trustees*, 424 F. App'x 492, 507 (6th Cir. 2011).

Here, Mrs. Hatcher alleges sufficient facts to support a conspiracy claim under both the Tennessee standard and the federal § 1983 standard. According to the Amended Complaint, Officer McNamara stopped the vehicle in which Mrs. Hatcher was riding without cause, proceeded to demand that she personally step out of the car, then questioned her about her actions and behavior at the Mall. However, Officer McNamara was not present at the Mall that day, meaning that someone from the Mall must have told him about Mrs. Hatcher before he

12

made the traffic stop. Given that Sergeant Martin was also a member of the MNPD and had personally expressed hostility towards Mrs. Hatcher at the Mall just minutes earlier, it is reasonable to infer, at least at this stage, that he may have alerted Officer McNamara to stop Mrs. Hatcher after she left the Mall. Furthermore, Mrs. Hatcher argues that, because Sergeant Martin never filed an incident report to ERMC, no videotape of the incident at the Mall was retained. Mrs. Hatcher argues that Sergeant Martin's failure to file an incident report was an intentional effort to cover up the true nature of the incident. Mrs. Hatcher also contends that both Officer McNamara and Sergeant Martin continued to press charges and/or otherwise assist in prosecuting her for the underlying charges, even though (she alleges) they knew that the charges were baseless.

Construing these allegations in the light most favorable to Mrs. Hatcher, the court finds that Mrs. Hatcher has articulated a claim that Sergeant Martin conspired with Officer McNamara to (1) falsely imprison her (through an unlawful traffic stop and arrest), in violation of Tennessee law; (2) maliciously prosecute her, in violation of Tennessee law;[13] and (3) deprive her of her federal constitutional rights, in violation of federal law. Accordingly, the state law conspiracy claim and § 1983 conspiracy claim against Sergeant Martin will proceed.

B. **Remaining Claims Against the Rivergate Mall Defendants**

---

[13]Sergeant Martin cites to *Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 213 (Tenn. Ct. App. 2000), for the proposition that "merely providing information to a police officer will not render that person liable" for false imprisonment. However, in *Roberts*, at the *summary judgment stage*, the Tennessee appellate court held that a hotel clerk and the hotel company for which he worked were not liable for false imprisonment, where the evidence demonstrated that the hotel clerk had simply reported suspicious behavior by a customer to the police, with no actual intent that the responding police would actually arrest that customer. Here, whether Sergeant Martin's actual conduct and motivations were sufficiently similar to the circumstances presented in *Roberts* is not appropriate for resolution at this stage.

Mrs. Hatcher alleges claims for false imprisonment, conspiracy, and malicious prosecution against the Rivergate Mall Defendants. Given that Mrs. Hatcher alleges no specific actions by the Rivergate Mall Defendants concerning these causes of action, the court construes the state law claims against the Rivergate Mall Defendants as claims premised on a *respondeat superior* theory of liability.[14]

Aside from Mrs. Hatcher's references to generic agency principles, the parties have not directly briefed the application of vicarious liability standards to the state law claims against the Rivergate Mall Defendants. However, in *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713 (Tenn. 2000), the Tennessee Supreme Court specifically addressed the standard under which a private employer can be held liable for the actions of an off-duty police officer acting as a private security guard for that employer. There, the court held that general Tennessee agency principles governed the issue, pursuant to which the following standard applies:

> [P]rivate employers may be held vicariously liable for the acts of an off-duty police officer employed as a private security guard under any of the following circumstances: (1) the action taken by the off-duty officer occurred within the scope of private employment; (2) the action taken by the off-duty officer occurred outside of the regular scope of employment, if the action giving rise to the tort was taken in obedience to order or directions of the employer and the harm proximately resulted from the order or direction; *or* (3) the action was taken by the officer with the consent or ratification of the private employer and with an intent to benefit the private employer.

*Id.* at 724 (holding that trial court erred in granting motion to dismiss).

As an initial matter, the *respondeat superior* claims against the Rivergate Mall Defendants can only be viable to the extent those claims are also viable against Sergeant Martin.

---

[14]To the extent Mrs. Hatcher contends that the Amended Complaint allegations establish that the Rivergate Mall Defendants are directly liable to her under Tennessee law, the court expressly rejects that argument.

*See McIntuff v. White*, 565 S.W.2d 478, 480 (Tenn. 1976) (stating that, if servant is not liable, master cannot be held liable under *respondeat superior* theory) (citing *Loveman v. Bayless*, 160 S.W. 841 (Tenn. 1913)); *Gibson Lumber Co. v. Neely Coble Co., Inc.*, 651 S.W.2d 232, 234 (Tenn. Ct. App. 1983) (same). Thus, because the claim for false imprisonment against Sergeant Martin will be dismissed, the false imprisonment claim against the Rivergate Mall Defendants will similarly be dismissed.

On the other hand, because the conspiracy and malicious prosecution claims against Sergeant Martin will proceed, the court must address the parallel claims against the Rivergate Mall Defendants. Assuming that those two claims against Sergeant Martin are otherwise viable, it is unclear whether the Rivergate Mall Defendants could be held vicariously liable for Sergeant Martin's conduct under any of the three theories articulated in *Revco*. For example, assuming the allegations to be true, it is unclear whether Sergeant Martin alerted Officer McNamara about Mrs. Hatcher in his capacity as a mall security guard (rather than a police officer), and, if so, whether he did so within the scope of his employment as a mall security guard or pursuant to orders from the Rivergate Mall Defendants. Similarly, it is unclear whether Sergeant Martin testified against Mrs. Hatcher in his role as a security guard or as a police officer, and whether he did so within the scope of his employment as a Mall security guard or at the direction of the Rivergate Mall Defendants. Thus, although the allegations concerning the Rivergate Mall Defendants are relatively sparse, the court finds that these case-specific issues will be best resolved on a developed record. Accordingly, the court will permit Mrs. Hatcher to pursue her conspiracy and malicious prosecution claims against the Rivergate Mall Defendants under a

vicariously liability theory only.[15]

**CONCLUSION**

For the reasons stated herein, the court finds as follows:

- Sergeant Martin's Motion to Dismiss § 1983 Harassment Claim (Docket No. 28) will be granted. Accordingly, the § 1983 harassment claim against him (Am. Compl. ¶¶ 65-69) will be dismissed with prejudice.

- Sergeant Martin's Motion to Dismiss the remaining claims (Docket No. 26) will be granted in part and denied in part. The state law false imprisonment claim against him will be dismissed with prejudice. Subject to the clarifications set forth herein, the state law conspiracy claim, state law malicious prosecution claim, and conspiracy to violate Mrs. Hatcher's constitutional rights (actionable under § 1983) will proceed.

- The Motion to Dismiss filed by CBL and ERMC (Docket No. 10) will be granted in part and denied in part. The § 1983 claims against CBL and ERMC will be dismissed without prejudice. The state law false imprisonment claim against CBL and ERMC will be dismissed with prejudice. Subject to the clarifications set forth herein, the state law conspiracy and malicious prosecution claims will proceed under a vicarious liability theory only.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[15] The court recognizes that the underlying claims against Sergeant Martin constitute intentional torts that may present specialized legal considerations not squarely addressed in *Revco*, which concerned an underlying negligence claim. Also, for purposes of the Motion to Dismiss, CBL and ERMC have not addressed whether the application of vicarious liability principles might differ as between CBL and ERMC, given that (at least as alleged in the Amended Complaint) only ERMC employed Sergeant Martin. At any rate, these are considerations that presumably will be best addressed with the benefit of a developed evidentiary record and targeted briefing at an appropriate stage in this case.